**Garnett R. DAVIS, Plaintiff,**

v.

**TENNESSEE VALLEY AUTHORITY,**
**Defendant.**

**Civ. A. No. 1174.**

United States District Court
N. D. Alabama,
Northwestern Division.
March 29, 1962.

John P. Witsill, Washington, D. C., and Gorman R. Jones, Sheffield, Ala., for plaintiff.

Charles J. McCarthy, Gen. Counsel, Tennessee Valley Authority, Thomas A. Pedersen, Asst. Gen. Counsel, and R. Lynn Seeber, Attorney, Tennessee Valley Authority, Knoxville, Tenn., for defendant.

LYNNE, Chief Judge.

Plaintiff was, until his dismissal on February 6, 1957, an employee of the Tennessee Valley Authority (hereinafter referred to as "TVA"). In this action against the TVA he seeks a declaratory judgment that his removal was invalid because in violation of provisions of 5 U.S.C.A. § 652 and the Veterans' Preference Act, as amended (5 U.S.C.A. § 851 et seq.). The defendant has moved for summary judgment on the alternative theories that (1) the plaintiff has failed to join indispensable parties, the members of the Civil Service Commission, and (2) the suit is barred by laches.

The sequence of events pertinent to both issues raised by defendant are outlined in plaintiff's complaint and affidavit as follows. On May 10, 1956, plaintiff was notified by H. H. Hayes, his superior in the TVA, that he was to be discharged. Plaintiff subsequently pursued his administrative remedies with the TVA and the Civil Service Commission. Finally, on February 4, 1957, plaintiff was advised by the TVA that his employment therewith was officially terminated as of February 6, 1957. This termination was sustained by the Fifth Regional Office of the Civil Service Commission on March 7, 1957, and by the Board of Appeals and Review of the Civil Service Commission on August 2, 1957. On November 8, 1957, plaintiff's petition to the Chairman of the Board of Appeals and Review of the Civil Service Commission to reopen and reconsider the case was denied. On June 12, 1959, plaintiff filed a suit in the United States Court of Claims against the United States, described in his affidavit as "for salary due and owing to me as a result of my unjustified dismissal." The Court of Claims dismissed that suit in June 1960, on the ground that it had no jurisdiction over the action. On May 10, 1961, the present suit was filed in this court.

■ In attacking the jurisdiction of this court on the ground that plaintiff has not joined members of the Civil Service Commission as indispensable parties, TVA proceeds on the following theory. Section 14 of the Veterans' Preference Act of 1944, as amended (5 U.S.C.A. § 863), the alleged violation of which is the basis of this suit, gives to plaintiff the right to appeal his dismissal to the Civil Service Commission. When an appeal is so taken, the decision of the Civil Service Commission, according to Section 863, "shall be mandatory for such administrative officer [of the agency of which the petitioner was an employee] to take such corrective action as the Commission finally recommends * * *." Thus, defendant argues, any court review of a removal

action is a review of the decision of the Civil Service Commission members who are therefore indispensable parties defendant. This precise question has been considered in several recent decisions, all of which rely ultimately on Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 96 L. Ed. 534 (1952). In Adamietz v. Smith, 273 F.2d 385 (3d Cir., 1960), cert. denied, 363 U.S. 850, 80 S.Ct. 1628, 4 L.Ed.2d 1732, a suit by a discharged postal employee against the postmaster of Pittsburgh, the requested relief included an injunction to restrain defendant from enforcing the Civil Service Commission order affirming defendant's removal action, and declaratory judgments declaring the dismissal action of the defendant and Post Office Department illegal and void, and the regulations of the Civil Service Commission void. Affirming the trial court's dismissal for failure to join indispensable parties, the court stated in 273 F.2d at 387:

"In dismissing the action, the district court relied upon Blackmar v. Guerre * * * [supra], a strikingly similar case * * *. The appellant here maintains that the Blackmar case is no longer the law and has been effectively overruled, albeit *sub silentio*, by Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S. Ct. 591, 99 L.Ed. 868 and Ceballos v. Shaughnessy, 1957, 352 U.S. 599, 77 S.Ct. 545, 1 L.Ed.2d 583.

"A careful reading of these cases convinces us that rather than overruling the decision in Blackmar, they reinforce the logic of that opinion. Even the appellant recognizes that they stand for the proposition that the question of indispensability of parties is dependent not on the nature of the decision attacked but on the ability and authority of the defendant before the court to effectuate the relief which the party seeks. * * *

"Even a cursory reading of appellant's prayer for relief indicates that the appellee herein is neither able nor authorized to grant all the relief the appellant seeks. This is particularly clear as regards that portion of the prayer which seeks a rehearing under rules other than those presently established by the Commission. *Moreover, the appellee is not even in a position to reinstate the appellant in the face of a contrary holding by the Commission. The very statute under which appellant grounded his appeal to the Civil Service Commission makes binding upon appellee its rulings. § 14, Veterans' Preference Act of 1944, 5 U.S. C.A. § 863;* also see 5 U.S.C.A. § 868." [Emphasis added.]

In accord are Zirin v. McGinnes, 282 F.2d 113 (3d Cir., 1960), and Haine v. Googe, 188 F.Supp. 627 (S.D.N.Y.1960), aff'd on opinion of district court, 289 F.2d 931 (2d Cir., 1961). The language of the Adamietz opinion is applicable here. Since TVA is bound by the order of the Civil Service Commission sustaining its removal action, the TVA alone is "neither able nor authorized" to grant the relief sought. Furthermore, it is evident that paragraph 2(f) of plaintiff's prayer specifically attacks the order of the Civil Service Commission on the ground that that body "failed to afford the plaintiff a hearing on his termination which was effective at the close of business on February 6, 1957."

Treating the defendant's motion for summary judgment on ground of plaintiff's failure to join the member of the Civil Service Commission as indispensable parties as a motion to dismiss, therefore, the plaintiff's complaint should be dismissed for lack of jurisdiction.

Inasmuch as it conclusively appears that this action is barred by laches, leave to amend the complaint to bring in such indispensable parties will not be granted. Application of the doctrine of laches to suits by discharged United States government employees for reinstatement or similar relief has been considered in a number of cases. The leading case is United States ex rel. Arant v. Lane, 249 U.S. 867, 39 S.Ct. 293, 63

L.Ed. 650 (1919), a petition for mandamus to require the Secretary of the Interior to restore the plaintiff to his position as superintendent of Crater National Park, from which he had been removed. The petition was filed twenty months after the plaintiff's discharge. In holding the suit to be barred by laches, the Court declared in 249 U.S. at 372, 39 S.Ct. at 294:

"When a public official is unlawfully removed from office, whether from disregard of the law by his superior or from mistake as to the facts of his case, obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert his rights, to the end that if his contention be justified the Government service may be disturbed as little as possible and that two salaries shall not be paid for a single service.

"Under circumstances which rendered his return to the service impossible, except under the order of a court, the relator did nothing to effectively assert his claim for reinstatement to office for almost two years. Such a long delay must necessarily result in changes in the branch of the service to which he was attached and in such an accumulation of unearned salary that, when unexplained, the manifest inequity which would result from reinstating him renders the application of the doctrine of laches to his case peculiarly appropriate in the interests of justice and sound public policy.

\* \* \* \* \* \* \*

"We agree with the Court of Appeals that it is entirely unnecessary to consider whether the removal of the relator from office was technically justified or not, since by his own

conduct he has forfeited the right to have the action of the Secretary of the Interior reviewed \* \* \*."

The Arant opinion has been followed in numerous decisions.[1]

In the absence of circumstances tending to show that Davis was diligent in an attempt to seek redress of the alleged wrong or that the lapse of time before institution of this suit was justified, Arant and the subsequent cases must be deemed controlling in the present action. The affidavit of O. M. Derryberry, an officer of TVA, in support of defendant's motion for summary judgment indicates that since plaintiff's discharge, other employees have performed the work which would have been performed by plaintiff, so that the relief sought herein would require that two salaries be paid for a single service. The length of elapsed time between the exhaustion of plaintiff's administrative remedies with the denial of his petition for reopening and reconsideration by the Civil Service Commission on November 8, 1957 and the institution of the present action is substantial when compared with the periods of delay involved in the above-cited cases. As disclosed by his complaint and affidavit, the only action taken by plaintiff during this period was the suit in the Court of Claims. This does not in itself sufficiently absolve him of his failure to exercise the diligence required in these circumstances. Irrespective of the one-year pendency of his suit there before its dismissal for lack of jurisdiction, there remains a twenty-month delay between the exhaustion of his administrative remedies and the filing of suit in the Court of Claims, and an eleven-month delay between the dismissal of that action and the institution of the present suit. Highly pertinent in this regard is Jones v. Summerfield, 105 U.S.App.D.C. 140, 265 F.2d 124 (1959), cert. denied, 361 U.S. 841, 80 S.Ct. 93, 4 L.Ed.2d 80, a suit

1. E. g., Grasse v. Snyder, 89 U.S.App.D.C. 352, 192 F.2d 35 (1951); Haas v. Overholser, 96 U.S.App.D.C. 22, 223 F.2d 314 (1955); Drown v. Higley, 100 U.S. App.D.C. 326, 244 F.2d 774 (1957);

O'Brien v. Rogers, 106 U.S.App.D.C. 36, 269 F.2d 227 (1959); Evans v. Leedom, 105 U.S.App.D.C. 141, 265 F.2d 125 (1959), cert. denied, 361 U.S. 935, 80 S. Ct. 377, 4 L.Ed.2d 356 (1960).

brought to obtain reinstatement on the basis of the decision in Cole v. Young, 351 U.S. 536, 76 S.Ct. 861, 100 L.Ed. 1396 (1956). In affirming the District Court's dismissal of the complaint on the ground of laches, the court stated in 265 F.2d at 124–125:

"Jones (a veteran) was removed on February 28, 1955; Cole was decided on June 11, 1956; Jones brought suit for reinstatement on January 10, 1957, in the United States District Court for the Eastern District of Pennsylvania. That suit was dismissed for lack of jurisdiction in May 1957, without prejudice. The instant suit was brought in the United States District Court for the District of Columbia on December 3, 1957. During the period after his discharge Jones and his attorneys also sought reinstatement through administrative action, writing to the President of the United States, the Civil Service Commission, and the Postmaster General. The replies were unfavorable, culminating in a letter from the Civil Service Commission on September 10, 1957, informing plaintiff that he could not be cleared for employment in the Federal competitive service. At no time did Jones seek review under Section 14 of the Veterans' Preference Act of 1944, 58 Stat. 390, as amended, 5 U.S.C.A. § 863.

"We think that plaintiff-appellant is barred by laches. His suit was not brought in a proper forum until thirty-three months had elapsed after his discharge, and some seventeen months after the decision in Cole v. Young. The letters to various administrative officials do not excuse his delay in bringing suit. * * * [Citations omitted.]"

The Jones case[2] appears to be a correct application of the rationale of Arant and is therefore dispositive of any meaning which plaintiff attaches to his unsuccessful suit in the Court of Claims.

Apparently the sole factor urged by Davis in justification of his delay is his financial embarrassment during the period after dismissal of the Court of Claims suit and before filing of the present action.[3] Under the circumstances this is not an adequate excuse. It does not explain the twenty-month delay in instituting suit in the Court of Claims, and it is evident that he was able financially to proceed in that forum. Cf.

2. Compare the following language from Benson v. Zahner, 289 F.2d 756, 757 (D.C.Cir., 1960):
"He [plaintiff] pursued his administrative remedies and exhausted them on August 4, 1954. Approximately one year later on August 8, 1955, appellee filed suit in the District Court seeking reinstatement. This action was dismissed without prejudice on May 16, 1958, because appellee failed to substitute newly appointed members of the Civil Service Commission as parties defendant within the six-month period * * *. Appellee filed the instant action on May 29, 1958, stating the same claim as in the earlier suit. * * *"
"The judgment of the District Court [for the plaintiff] must be reversed because appellee is guilty of laches. One year elapsed between the final administrative action and the institution of the first suit. An additional period of almost three years passed before that suit was dismissed. Then almost another year elapsed between the institution and trial of the present suit. Absent any evidence to the contrary, appellee's failure to obtain a substitution of parties in the first suit must be attributed to his lack of diligence." [Footnote omitted.]

3. Plaintiff's affidavit states:
"in a period of less than one year after this decision [of dismissal] by the Court of Claims of the United States I was able to cause the present suit to be filed. As a result of my arbitrary dismissal I was left in a position without sufficient funds to do the necessary research and pay all necessary expenses to commence litigation in this Court. The denial of a right to earn a living has hampered my proceeding more quickly before the Courts and cannot in my opinion now be the basis for a dismissal by this Court on the question of a delay in time."

Dixon v. American Tel. & Tel. Co., 159 F.2d 863 (2d Cir., 1947). Moreover, it has been repeatedly asserted in the decisions that impecuniousness in itself does not acquit one of laches.[4]

---

4.  Hayward v. National Bank, 96 U.S. 611, 24 L.Ed. 855 (1877); Leggett v. Standard Oil Co., 149 U.S. 287, 13 S.Ct. 902, 37 L.Ed. 737 (1893); Wolf Mineral Process Corp. v. Minerals Separation North American Corp., 18 F.2d 483, 490 (4th Cir., 1927); Gillons v. Shell Co. of California, 86 F.2d 600, 606 (9th Cir., 1936); Whitman v. Walt Disney Productions, Inc., 263 F.2d 229, 231 (9th Cir., 1958); Landell v. Northern Pacific R. R., 122 F.Supp. 253, 258 (D.D.C.1954).