**Jules DRUCKER and Leland Pearson**

v.

**The UNITED STATES.**

**No. 327–69.**

United States Court of Claims.

June 19, 1974.

John I. Heise, Silver Spring, Md., attorney of record for plaintiff; Lebovici & Safir, New York City, of counsel.

Bernard M. Brodsky, Buffalo, N. Y., with whom was Asst. Atty. Gen., Carla A. Hills, for defendant.

Before COWEN, Chief Judge, and SKELTON and KUNZIG, Judges.

KUNZIG, Judge:

In this joint civilian pay case, plaintiffs claim entitlement to be "slotted" in the upper category of professorial rank at the Merchant Marine Academy (Academy), and charge the Assistant Secretary of Commerce for Maritime Affairs with abuse of discretion in not

so slotting them. We hold that there was no abuse of discretion, and that the administrative decision that plaintiffs should not be so slotted is supported by substantial evidence.

The facts in the instant controversy were adequately set forth in our first decision of this case, Drucker and Pearson v. United States, 451 F.2d 619, 195 Ct.Cl. 335 (1971), and may be sparingly summarized here. Plaintiffs, both associate professors at the Academy, were recommended for promotion to full professorships by their department heads in March 1968. Pursuant to an agreement reached by the Maritime Administrator with the United Federation of College Teachers (UFCT) in May 1968, faulty salaries at the Academy were to be revised so as to correspond more closely to those of the Naval Academy. Def. Exhibit B. The central passage of this 1968 agreement read:

> Those faculty members fully meeting the Maritime Administration qualification requirements of March 1966 * * * for their rank *may* be converted to a higher rate in the upper pay category for their rank * * * *when the upper pay category is determined to be merited based on such factors as demonstrated professional competence and achievement, teaching ability, scholarly activity, and potential for future development* [emphasis added].

Because plaintiffs' promotions as full professors were not effectuated until August 1968, the Categorization Committee responsible for slotting[1] Academy personnel for their new salaries, which met during the summer of 1968, considered plaintiffs as associate professors. Plaintiff Drucker was eventually slotted at step 31, upper category, associate professor, and plaintiff Pearson at step 29, upper category, associate professor.

On September 4, 1968, plaintiffs filed a joint grievance under Department of Commerce Administrative Order 202–770. Their grievance was denied. Thereafter, they filed suit in this court, seeking reclassification in upper category professor slots and appropriate back pay.

The court held on July 14, 1971, that the procedures of the Categorization Committee were substantially defective in not treating plaintiffs as full professors. Drucker and Pearson v. United States, *supra*, 451 F.2d at 623, 195 Ct.Cl. at 342. Speaking for the court, Judge Laramore said at p. 623 of 451 F.2d, at p. 342 of 195 Ct.Cl.:

> [A] procedural error has been committed and for that reason we deny defendant's motion for summary judgment and grant plaintiffs' motion to the extent indicated herein. Consequently, we are suspending further action in this case so that the proper officials of the Maritime Administration may reconsider the category in which the plaintiffs, as professors, are slotted. We do not decide in which slot each plaintiff should be placed because to do so would be to substitute our judgment for that of the agency. The final decision as to the proper category, based on the criteria set forth in the agreement, together with a procedure that accords each faculty member equal treatment, is within the discretion of the agency involved herein. Once the procedural defect noted above has been cured, we are confident that plaintiffs will have been afforded every consideration to which they are entitled.

Action in the case was thereupon suspended, and the matter remanded to the Department of Commerce. On May 21, 1973, a Final Opinion and Order was issued by the Assistant Secretary of Commerce for Maritime Affairs denying plaintiff Drucker's claim for step 41 cat-

---

[1]. Simply stated, "slotting" is the process by which an individual is placed in a newly revised salary scheme. For further discussion of the slotting process, *see* Jarett v. United States, 451 F.2d 623, 195 Ct.Cl. 320 (1971).

egorization and plaintiff Pearson's for step 40, but raising Drucker to step 35, lower category, full professor, and Pearson to step 34, lower category, full professor.

Appreciating the agency's discretion, the court directed the proper officials to reconsider plaintiffs' slottings, guided by the criteria promulgated by the 1968 agreement and utilizing a procedure that accords each faculty member equal treatment.[2] Plaintiffs' allegation that, if they qualified for professorial status then they clearly qualified as a matter of law for upper category slotting, is supported by neither the 1968 agreement nor the law of the case.

Accordingly, the case now becomes purely an exercise in the law of administrative discretion. The sole question remaining for us is whether there has been an abuse of that discretion by the Assistant Secretary of Commerce.

■ Plaintiffs argue that the Assistant Secretary acted grossly erroneously and was arbitrary and capricious by not slotting them in the upper category of professorial rank. Defendant urges the procedural defect earlier identified has been cured, and the court's mandate in *Drucker and Pearson I* obeyed in all respects. We hold for defendant.

■■ The proper standard for our review of the Assistant Secretary of Commerce's decision regarding the slotting of plaintiffs is whether there is a rational basis in the record for that determination. Where an exercise of administrative discretion is involved, the action will be disturbed only if plaintiffs succeed in establishing that it is "so clearly wrong" as to be arbitrary. Albert v. United States, 437 F.2d 976, 979, 194 Ct.Cl. 95, 101–102 (1971). *See also* United States v. Shimer, 367 U.S. 374, 381–382, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961).

Webster's Third New International Dictionary (1961) defines discretion as "[the] power of decision: individual judgment * * * [the] power of free decision or choice within certain legal bounds." Black's Law Dictionary (rev. 4th ed. 1968) adds that,

> [w]hen applied to public functionaries, discretion means a power or right conferred upon them by law of acting officially in certain circumstances, according to the dictates of their own judgment and conscience, uncontrolled by the judgment or conscience of others.

In other words, the Assistant Secretary of Commerce had a choice within certain bounds; he could properly use his own judgment, uncontrolled by the judgment or conscience of others. This he did in granting a partial raise in slotting to plaintiffs while not fully satisfying their demands. That he was the correct official so to do, under a proper delegation of authority, cannot be questioned. Dept. of Commerce Administrative Order 202–250 (Aug. 31, 1966). Indeed, plaintiffs received the benefit of review of their grievance at the highest levels of the Commerce Department.

■ Plaintiffs, themselves betraying some lack of discretion of a different sort, employ strong innuendos to suggest a degree of personal bias or animosity on the part of the Assistant Secretary in his handling of their grievance. Allegations of administrative impropriety are serious accusations to be levelled at any public official, particularly when, as here, completely unsupported. We cannot ignore the presumption that every public official discharges his functions fairly and according to law. Urbina v. United States, 428 F.2d 1280, 1284, 192 Ct.Cl. 875, 881 (1970); Knotts v. United States, 121 F.Supp. 630, 631, 128 Ct.Cl. 489, 492 (1954). No evidence is advanced to rebut this presumption in the matter here before us.

---

2. Indeed, in Jarett v. United States, *supra*, the companion case to *Drucker and Pearson I*, we noted, 451 F.2d at 626–627, 195 Ct.Cl. 326–327, that our effort to affect the Commerce Department's exercise of discretion in this matter could pose jurisdictional problems. *See* Administrative Procedure Act, 5 U.S.C. §§ 701, 702 (1970).

Plaintiffs also urge upon the court certain after-the-fact affidavits by a former dean of the Academy and several members of the 1968 Categorization Committee to show what step they would have allocated plaintiffs at the original slotting. We find after-the-fact affidavits unpersuasive as evidence of what one might have done had a situation of an earlier day been different from what actually transpired. Times change; situations evolve; memories falter. We cannot indulge in an exercise of fantasy distilled *ex post facto* from a perception of what might have been.

The essence of this case lies in what the Assistant Secretary *did* do. His decision reveals he made use of the materials before the Categorization Committee in 1968 and applied these to an evaluation at the rank of full professor. He made a conscious examination of plaintiffs' professional profile in light of the guidelines set forth in the May 1968 agreement: demonstrated professional competence and achievement, teaching ability, scholarly activity, potential for future development.

He did scrutinize the Categorization Committee's 1968 report, and observed that the Committee had not (1) placed plaintiffs at the highest rating possible in upper category, associate professor; (2) exercised its ability to issue a recommendation to grant plaintiffs higher rating privileges despite their apparent associate professor ceiling. Using a procedure that accorded each faculty member equal treatment,[3] the Assistant Secretary rendered a carefully analyzed decision which took account of suggested findings of fact from both sides and carefully set forth his rationale in exercising his discretion.

If the Assistant Secretary took into consideration that neither plaintiff had ever actually performed in the rank of full professor and were the *only two* Academy professors in that situation at the time of slotting; if he observed that the only evaluations of plaintiffs were as associate professors; if he concluded there exist different standards of competence and responsibility for assessing associate professors and full professors; if he considered experience in grade an important criterion under the guidelines of the May 1968 agreement; if he noted plaintiff Drucker was pressing for a 17-step advancement, while no other faculty member had been advanced more than nine steps and the typical gain was three to six steps; we cannot discern these factors represented an abuse of discretion.

Plaintiffs conceded at oral argument "there was room for the Assistant Secretary to use discretion," but emphasized it must be "appropriate" discretion. We find this formula for judicial review unworkable.[4] For our purposes, the discretion here exercised was completely "appropriate" at all times. In particular, we point out that the slotting steps of both plaintiffs were *raised* by the Assistant Secretary following our initial decision in this case.

Without a certain freedom of decision, without the power of choice, there can be no true discretion. Plaintiffs' view of the Assistant Secretary's role would leave him no real choice, but reduce him to some sort of automaton, routinely programming identical slotting for all Academy faculty members.

In conclusion, plaintiffs fail to recognize that the essence of any discretionary decision is a choice which might

---

3. It must be borne in mind that "equal treatment" is not to be equated with "equal slotting" or "equal salary." The guidelines established in *Drucker and Pearson I* reveal that the court spoke of "equal treatment" in *procedures* alone, while leaving the ultimate determination of slotting to administrative discretion. 451 F.2d at 623, 195 Ct.Cl. at 342.

4. No such qualification of administrative discretion is suggested in the case law on the fixing of wage scales. *See* Adams v. United States, 141 Ct.Cl. 133, 134–135 (1958); Mitchell v. McNamara, 122 U.S.App.D.C. 224, 352 F.2d 700, 701 (1965); Reinheimer v. Panama Canal Co., 344 F.Supp. 510, 515 (D.Canal Zone 1972).

rationally go either way. The burden is on Messrs. Drucker and Pearson to demonstrate an abuse of administrative discretion. Bookman v. United States, 453 F.2d 1263, 1268, 197 Ct.Cl. 108, 116 (1972). They have failed to carry this burden. That the decision of the Assistant Secretary may be disappointing to plaintiffs does not detract from its validity.

In our previous decision, we remanded the case to the Maritime Administration so that the proper officials could exercise their discretion and reconsider the slotting of plaintiffs herein. The Assistant Secretary of Commerce for Maritime Affairs exercised that discretion without bias or favor. There was no error, no abuse of discretion.

Accordingly, plaintiffs' motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted, and the petition is dismissed.