**Arthur N. ECONOMOU et al., Plaintiffs,**

**v.**

**Earl L. BUTZ, Secretary of Agriculture, et al., Defendants.**

**No. 71 Civ. 1263.**

United States District Court,
S. D. New York.

Jan. 9, 1974.

Arthur N. Economou, pro se.

Paul J. Curran, U. S. Atty., S. D. New York, for defendants; Daniel H. Murphy, II, Asst. U. S. Atty., of counsel.

GURFEIN, District Judge:

This is an action against Earl L. Butz, Secretary of Agriculture, the Commodity Exchange Authority, and Alex C. Caldwell, Act Administrator under the Commodity Exchange Act, 7 U.S.C. § 1 et seq. The plaintiff, Arthur N. Economou, is president of an Association of Commodity Traders, and a general partner in the Economou Grain Futures Trading Syndicate, a co-plaintiff. Economou appears pro se.

This is a motion by the defendants for summary judgment pursuant to Fed.R. Civ.P. 56. Plaintiffs commenced this action on March 18, 1971 with a motion seeking a preliminary injunction that would have stayed the Commodity Exchange Authority from holding an oral hearing on March 19, 1971 concerning the raising of speculative limits on daily trading of *soybeans and corn* from 2,000,-000 to 3,000,000 bushels. By an order entered March 29, 1971, Judge Cannella denied plaintiffs' motion. Judge Cannella, in his opinion of March 29, 1971, noted that the plaintiffs, armed with the materials supplied by the Government on March 22, 1971, had until April 16,

1971 to submit written arguments. He also noted that if the plaintiffs were unsuccessful before the Authority they could still appeal the final agency action and obtain a stay pending review, citing 5 U.S.C. §§ 704, 705, Sinclair Oil Corp. v. Smith, 293 F.Supp. 1111, 1116 (S.D. N.Y.1968), and Sperry & Hutchinson v. F. T. C., 256 F.Supp. 136 (S.D.N.Y.1966).

As we shall see, neither the amended complaint, nor Mr. Economou's affidavit of October 15, 1973, suggest that he did anything to follow Judge Cannella's suggestion.

On May 18, 1971, the defendants moved for judgment on the pleadings (Rule 12(c)) to dismiss plaintiffs' complaint as moot.

Judge Croake, on June 8, 1971, granted the motion "insofar as it pertains directly to the hearings of March 19, 1971," but he refused to grant "judgment for the defendants on the pleadings with regard to future hearings." He inferentially denied plaintiff's request for information from the Government for his use in preparing for the hearing on the ground that it, too, was moot.

In fact, the hearing was held as scheduled on March 19, 1971, but the study requested by the plaintiff was not furnished to him until March 22, 1971, after the hearing was concluded, though it bears the date of March 16, 1971. That was not as futile a gesture as it might seem, for the plaintiff had four weeks from the conclusion of the hearing to make written comments on the evidence presented. 17 C.F.R. § 0.76(f).

In his memorandum filed March 23, 1971 in opposition to the plaintiff's motion for a preliminary injunction and in support of the defendants' motion to dismiss the complaint, the U. S. Attorney noted that (1) plaintiffs have four weeks to submit comments and (2) they may attack the final order when it is final, and, as noted, Judge Cannella incorporated these suggestions into his Memorandum Opinion.

After Mr. Economou's unsuccessful effort to restrain the hearing and Judge

Croake's subsequent partial dismissal, in June of 1971, the action lay still without movement until, when the matter was assigned to me under the individual calendar system on July 1, 1972, a motion for leave to amend the complaint was made on April 23, 1973, which the Government did not oppose. Plaintiffs then amended their complaint pursuant to leave granted on May 13, 1973. Jurisdiction is based *inter alia*, upon the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. § 608a(6); the Administrative Procedure Act, 5 U.S.C. §§ 701–706; the Review Act of 1950, 5 U.S.C. § 1031; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and 28 U.S.C. §§ 1337, 1338.

The amended complaint now seeks to nullify the amendments to the *corn and soybean* limits on speculative trading[1] issued on June 23, 1971, 36 Fed.Reg. 12163–4, on three grounds: (1) that the notice of hearing failed to disclose that the limit on the amount of trading on wheat, as well as soybeans and corn, was also at issue; (2) that the impetus for the hearing was unlawfully prompted by the Chicago Board of Trade, a party in interest; and (3) that there should have been an adjudicatory hearing under Sections 7 and 8 of the Administrative Procedure Act, rather than a rule-making hearing. Plaintiffs seek a permanent injunction ordering the Commodity Exchange Authority to comply with its own regulations and the requirements of the Administrative Procedure Act in conducting rule-making proceedings in the future.

The defendants suggest the plaintiffs are wrong when they allege that the speculative limits on *wheat* were involved in the hearing on *soybeans and corn*. They say further that the Authority gave proper notice of its proposed rule-making with respect to speculative limits on soybeans and corn, (see Fed.Reg. of January 28, 1971 and March 5, 1971) and has consistently done so. They, accordingly, move for summary judgment.

Plaintiffs complain because the rule-making proceeding was allegedly initiated by an interested party, the Chicago Board of Trade. But the applicable regulations provide for proceedings to be initiated in that manner. 17 C.F.R. § 0.73. Interest of a party to support the proposed rule does not make the hearing improper if adequate notice is given to all other interested parties, and they are allowed to participate.

In the amended complaint filed in May, 1973, the plaintiffs seek to nullify the order made on June 23, 1971, almost two years before. There may be serious grounds for reviewing the order, and the plaintiffs may have standing to do so on their claim that they simply cannot trade in corn or wheat when the corn and soybean daily speculative limit is 3,000,000 bushels a day, while the daily speculative limit for wheat remains only 2,000,000 bushels a day. But the attempt to review a final order of an agency which deals with *daily* trading activity, almost two years after the issuance of the order, on alleged procedural deficiencies in its promulgation, does not commend itself to a court of equity, and seems inexcusable even in the case of a pro se plaintiff. See Abbott Laboratories v. Gardner, 387 U.S. 136, 155, 87 S. Ct. 1507, 18 L.Ed.2d 681 (1967). See also, Haas v. Overholser, 96 U.S.App.D.C. 22, 223 F.2d 314 (1955); Chiriaco v. United States, 235 F.Supp. 850 (N.D.Ala. 1963), aff'd, 339 F.2d 588 (5 Cir. 1964); Brown v. United States, 418 F.2d 442 (5 Cir. 1969).

Moreover, the complaint that the hearing should have been conducted as an adjudicatory hearing rather than as a rule-making hearing is, I think, without merit. Congress created the Commodity Exchange Commission, consisting of the Secretary of Agriculture, the Secretary of Commerce, and the Attorney General. 7 U.S.C. § 2. Under the Act, excessive speculation was deemed a burden on interstate commerce, and authority was

---

1. These amendments have been codified under 17 C.F.R. § 150.4 and 17 C.F.R. § 150.11, of the Orders of the Commodity Exchange Commission.

delegated to the Commission "after due notice and opportunity for hearing, by order [to] proclaim and fix such limits on the amounts of trading which may be done or positions which may be held by any person under contracts of sale of such commodity for future delivery on or subject to the rules of any contract market as the commission finds are necessary to diminish, eliminate, or prevent such burden." 7 U.S.C. § 6a. Perhaps anticipating Mr. Economou's complaint, the statute specifically provides that "[n]othing in this section shall be construed to prohibit the commission from fixing different trading or position limits for different commodities. . . ." *Id.*

Orders issued under this legislation are obviously within the rule-making power delegated to the Commission. Their function in this regard is not to adjudicate individual cases but to issue general rules for the conduct of commodity transactions.

■ I am satisfied from the papers submitted that the June 1971 order was based on a proper procedure for notice and a fair rule-making hearing.

The Administrative Procedure Act, 5 U.S.C. § 553, simply requires a general notice of proposed rule-making in the Federal Register which shall include (1) a statement of the time, place, and nature of the public rule-making proceedings; (2) reference to the legal authority under which the rule is proposed; and (3) either the terms or the substance of the proposed rule or a description of the subjects and issues involved.

The regulation specifically applicable to rule-making hearings of the Commission is set out in 17 C.F.R. § 0.75 as follows:

"Notice of hearing. At least 10 days prior to any public hearing held in a rulemaking proceeding, unless the Commission shall determine that an emergency exists which requires a shorter period of notice, notice of such hearing shall be published in the Federal Register and shall be sent to all persons known to be interested in the proposed regulation. The notice shall state the time and place of hearing and shall contain one or more of the following:

(a) The exact text or a summary thereof of proposed findings, conclusions, and order;

(b) A summary of the results of any investigation made, or conference held in anticipation of the hearing;

(c) A statement of the issues to be considered at the hearing, insofar as such issues may be known at the time of issuance of the notice."

The foregoing is in the disjunctive and was complied with.

■ I do not agree with the Government that Judge Croake's decision dismissing the complaint with respect to the hearing of March 19, 1971 as moot, forecloses the defendant from raising all issues concerning that particular hearing. While I might readily accept Judge Croake's decision as the law of the case, he decided nothing except that the issue was moot since the hearing had already been held. A decision that an issue is moot is the converse of a decision on the merits. It says that there was *no* decision on the merits.

It is, for that reason, that I have considered the merits as well as the question of laches. I have found on both issues against the plaintiffs. The hearing of March 19, 1971 will not be declared a nullity. The order of June 23, 1971 will not be annulled.

The plaintiff also seeks a permanent injunction to compel the defendants to obey the requirements of the Administrative Procedure Act. 5 U.S.C. § 551 et seq. and the Commodity Exchange Act, 7 U.S.C. § 1 et seq. and the Rules of Practice promulgated thereunder, with respect to the holding of hearings pursuant thereto.

In their prayer for relief, the plaintiffs ask the Court to order that the defendants provide for adjudicatory hearings, pursuant to Section 5 et seq. of the Administrative Procedure Act

"whenever the existing rights and opportunities of interested parties are intimately and adversely affected by a proposed order of the [Commission] issued pursuant to Section 4a(1) of the Act."

For reasons stated above, the prayer is insufficient in law, for the subject matter is governed by rule-making rather than adjudicatory procedures.

The plaintiffs further seek a permanent injunction restraining defendants from convening any hearing in the future, without publishing the required notices and without making available to the plaintiffs and others of their class, well prior to the hearings, all data and information which form the basis for any orders proposed for issuance under Section 4a(1) of the Act.

The plaintiffs are faced with a significant problem on this summary judgment motion:

■ While the plaintiffs may have had standing to review the March 19, 1971 hearing because of alleged failure to give them adequate notice and to supply them with required information, they have no general standing to police the work of the Commission in its future rule-making. Mr. Economou's expertise in straddling and spreading commodity futures hardly qualifies him for the policing role. If standing were to be afforded these plaintiffs, every commodity broker in the United States could claim the right to regulate in advance the procedural process of the Commission. That would border on absurdity. Adequate relief is available if and when the Commission should falter in its duty.

As the Supreme Court has said recently in United States & I. C. C. v. SCRAP, 412 U.S. 669, 688–689, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973), "[a] plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action."

Summary judgment is granted on behalf of the defendants.